# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

B.W. by his parents WALTER S.      )
WEBSTER AND DANIELLE CORRIGAN-     )
WEBSTER,                           )
                                   )
            Plaintiffs,            )
                                   )
        v.                         )        No. 1:09CV970
                                   )
DURHAM PUBLIC SCHOOLS,             )
                                   )
            Defendant.             )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on a Motion to Remand (Docket Entry 9) this action to state court filed by Walter Webster and Danielle Corrigan Webster on behalf of their son, B.W. ("Plaintiffs").[1] For the reasons that follow, the Court will deny Plaintiffs' Motion to Remand.

## I.  BACKGROUND

This matter arises under the Individuals with Disabilities Education Act ("IDEA"). (Docket Entry 1, Ex. A, ¶ 1.) Part of the IDEA's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education [('FAPE')] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "The IDEA requires all states receiving federal

_____

[1] As discussed herein, the Court concludes that this case constitutes a "civil action" and, as a result, the Court will refer to the Websters as "Plaintiffs," rather than "Petitioners."

education funds to provide disabled school-children with a [FAPE]." M.S. ex rel. Simchick v. Fairfax County Sch. Bd., 553 F.3d 315, 318 (4th Cir. 2009) (citing 20 U.S.C. § 1412(a)(1)(a) (internal quotation marks omitted)). The state's policies must include an Individualized Education Program ("IEP"), a "written statement for each child with a disability" that describes, among other things, "the special education and related services and supplementary aids and services . . . to be provided to the child." 20 U.S.C. § 1414(d)(1)(IV). "IEPs are the primary vehicle through which schools provide a particular student with a FAPE." M.S., 553 F.3d at 319.

Parents may participate in the IEP development process and may challenge IEPs they believe are inadequate." Id. (citing 20 U.S.C. § 1415(b)-(h)). The IDEA provides certain "procedural safeguards with respect to the [state agency's] provision of a [FAPE]." 20 U.S.C. § 1415(a). These procedures permit any party "to present a complaint with respect to any matter relating to . . . the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). The party that brings the complaint "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). If the hearing "is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal

such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1).

In North Carolina, "[a]ny party may file with the Office of Administrative Hearings a petition to request an impartial hearing with respect to any matter relating to the . . . provision of a [FAPE] of a child." N.C. Gen. Stat. § 115C-109.6(a). Additionally, "[a]ny party aggrieved by the findings and decision of a hearing officer [from the Office of Administrative Hearings] may appeal . . . within 30 days after receipt of notice of decision by filing a written notice of appeal with the person designated by the State Board [of Education]." N.C. Gen. Stat. §§ 115C-109.9(a), 115C-107.2. The State Board of Education then appoints a Review Officer to conduct an impartial review of the decision. <u>Id.</u>

Both state and federal law permit a party dissatisfied with the State Review Officer's ("SRO") decision to bring a civil action in either state or federal court. <u>See</u> N.C. Gen. Stat. § 115C-109.9(d) ("Any party that does not have the right to appeal . . . who is aggrieved by the decision of the Review Officer . . . may institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415."); 20 U.S.C. § 1415(i)(2)(A) (providing that parties dissatisfied with a hearing decision and appeal have "the right to bring a civil action with respect to the complaint presented . . . in any State court of competent jurisdiction or in a district court of the United States"). Additionally, with respect to actions brought under the federal

-3-

statute, the IDEA provides that "[t]he district courts of the United States shall have jurisdiction . . . without regard to the amount in controversy."  20 U.S.C. § 1415(i)(3)(A).

Under this framework, parents who place their child in a private school may seek tuition reimbursement "if (1) the school district failed to provide a FAPE and (2) the parental placement is appropriate."  <u>M.S.</u>, 553 F.3d at 323-24.

## II. FACTS

Plaintiffs seek to utilize the IDEA's procedural safeguards after previously seeking relief in a state hearing and from a SRO. The Durham Public Schools ("Defendant") identified B.W., a preschool-aged child, as in need of special education.  (Docket Entry 13 at 1.)[2]  In December 2008, Plaintiffs filed a Petition for Contested Case Hearing against Defendant seeking reimbursement for private educational services.  (<u>Id.</u>)

The Office of Administrative Hearings held a hearing on the matter and, on August 17, 2009, the Chief Administrative Law Judge ("ALJ") ruled that Defendant had not denied B.W. a FAPE and that Plaintiffs lacked any right to the requested relief.  (<u>Id.</u>)  On September 16, 2009, Plaintiffs filed an appeal with a SRO.  (<u>Id.</u> at 2.)  On October 16, 2009, the SRO, based on the parties' written arguments, issued a decision upholding the Chief ALJ's ruling. (<u>Id.</u>)

---

[2] The facts are taken primarily from Defendant's Response to the Motion to Remand, because Plaintiffs provide little description of the background facts of this case.  (<u>See</u> Docket Entry 10.)

On November 16, 2009, pursuant to N.C. Gen. Stat. § 115C-109.9(d), Plaintiffs filed a "Petition" in the General Court of Justice Superior Court of Durham County, requesting that the Court reverse the SRO's decision. (Docket Entry 1, Ex. A at 1.) On December 17, 2009, Defendant filed a Notice of Removal to remove the action to this Court. (Docket Entry 1.) On January 28, 2010, Plaintiffs filed their Motion to Remand (Docket Entry 9), and Defendant filed its response on February 19, 2010 (Docket Entry 13).[3]

## III. DISCUSSION

In this discussion, the Court sets out the standard for a motion to remand and then analyzes Plaintiffs' specific arguments. In analyzing Plaintiffs' Motion to Remand, the Court first discusses the nature of IDEA actions and related jurisdictional issues. Next, the Court addresses the "well-pleaded complaint rule" and whether Plaintiffs' allegations in their Complaint raise a federal question. Lastly, the Court considers Plaintiffs' arguments related to the "artful pleading doctrine."

### A. Standard for a Motion to Remand

"The burden of demonstrating jurisdiction resides with the party seeking removal." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (internal quotation marks omitted). A court "construe[s] removal jurisdiction strictly because of the significant federalism concerns implicated." Id. (internal

---

[3] Plaintiffs did not file a reply brief addressing Defendant's arguments raised in the Response.

quotation marks omitted). If a court determines that federal jurisdiction is doubtful, then it is necessary to remand the action to state court. Id.[4]

If a district court has original jurisdiction of a state court case, that is, the case could have originally been filed in district court, then a defendant may remove that state court case to the district court embracing the place where the action is pending "[e]xcept as otherwise provided." 28 U.S.C. § 1441(a). The district court's original subject matter jurisdiction includes federal question claims: "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A court unquestionably has federal subject matter jurisdiction "in cases where federal law creates the cause of action." Dixon, 369 F.3d at 816 (emphasis and internal quotation marks omitted).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "[T]he plaintiff is the master of his complaint and generally [the well-pleaded complaint rule] permits plaintiffs to

_____

[4] In their brief, Plaintiffs provide a lengthy discussion of this point of law stating that if their argument "raise[s] any doubt in the Court's mind over whether removal of this action is proper under [28 U.S.C.] § 1441, then this Court should be mindful of the long tradition of the federal courts to resolve doubts over the propriety of removal in favor of remand." (Docket Entry 10 at 7-8.) As set forth herein, the Court has no doubt that removal is appropriate.

avoid federal jurisdiction by exclusive reliance on state law." Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996) (internal quotation marks omitted). The "artful pleading doctrine" is an "independent corollary" to the well-pleaded complaint rule. Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998). This doctrine allows removal of cases to the district court "even though no federal question appears on the face of plaintiff's complaint" if a plaintiff omits "pleading necessary federal questions" or if "federal law completely preempts a plaintiff's state-law claim." Id. Accord Advanced Sterilizer Dev. and Design, Inc. v. Roadway Express, Inc., No. 1:02CV285, 2002 U.S. Dist. LEXIS 24380, at *4 (M.D.N.C. Aug. 21, 2002) (Beaty, J.) (unpublished).

B. Analysis of Motion to Remand

This Court analyzes Plaintiffs' Motion to Remand by first examining Plaintiffs' position that this action constitutes an "appeal," such that this Court lacks original jurisdiction. Next, the Court addresses Plaintiffs' argument that two district court cases regarding the artful pleading doctrine support their Motion to Remand.

1. Original Jurisdiction

Plaintiffs argue that this Court lacks original jurisdiction over this IDEA action. (Docket Entry 10 at 5.) Many of the considerations relevant to this issue are set out in Kirkpatrick v. Lenoir County Bd. of Educ., 216 F.3d 380 (4th Cir. 2000). In Kirkpatrick, a North Carolina resident filed with the state a special education due process petition alleging that the Lenoir

County Board of Education failed to provide a FAPE for her child;
said parent sought reimbursement for independent educational
evaluations ("IEEs") and private school tuition.  Id. at 382.
After a hearing, an ALJ ordered the Board of Education to develop
an IEP, but denied reimbursement for IEEs and private school
tuition.  Id.  On appeal, the SRO ordered the board to provide
reimbursement for the IEEs, but not the tuition payments.  Id.  The
parent filed a complaint in federal court requesting reimbursement
for private school tuition and the board filed an answer in which
it requested a judgment denying reimbursement for the IEEs.  Id.
The parent sought to dismiss the board's claim regarding payment
for IEEs as an untimely appeal, but the district court denied that
motion and characterized the board's answer as including a
compulsory counterclaim.  Id. at 383.  The district court
subsequently ordered the development of an IEP, but denied
reimbursement for either the IEEs or tuition.  Id.

On appeal, the United States Court of Appeals for the Fourth
Circuit affirmed the judgment of the district court and held that
an action filed pursuant to the IDEA constitutes a civil action,
not an appeal.  Id. at 387.  The Fourth Circuit observed that 20
U.S.C. § 1415(i)(2)(A) uses the term "civil action" to describe the
type of action brought in federal court as opposed to "appeal."
Id. at 384.  As the Fourth Circuit explained:

> Courts frequently use appellate-type language
> when deciding cases pursuant to 20 U.S.C. §
> 1415(i)(2)(A).  .  .  .  Because of the
> judicially-imposed deference and the
> quasi-appellate nature of IDEA actions, there

appears to be confusion as to the exact nature
of the IDEA proceedings before the district
courts. Out of convenience and expediency,
many courts use language suggesting that they
are affirming or reversing the decision of the
state administrative agency. Several courts
also indicate that the matter is before the
court on cross-appeals or cross-motions for
summary judgment despite the fact that there
are clearly disputed issues of material fact.
As we conclude, IDEA actions are original
civil actions that should typically be
disposed of by motions for judgment. To the
extent that federal courts have used
terminology such as "review," "appeal,"
"upheld," or "vacated," that terminology is
not appropriate in a strict legal sense. The
lack of precision by courts, however, does not
convert what are clearly original civil
actions into impermissible cross-system
appeals.

Id. at 385 n.4.[5] The Fourth Circuit also noted that a district

court hearing a case brought under this provision receives evidence

as in an original civil action as opposed to an appeal. Id. at

384.[6] Finally, the Fourth Circuit stated that "our system of

federalism dictates that courts characterize IDEA actions as

original civil actions instead of appeals." Id. at 386 (citing

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)).

In the face of the Kirkpatrick decision, Plaintiffs raise

three arguments that this Court lacks original jurisdiction.

First, Plaintiffs claim that this Court lacks original

_____

[5] As previously noted, 20 U.S.C. § 1415(i)(2)(A) allows a party to bring
a civil action if aggrieved by the findings and decision made under 20 U.S.C.
§ 1415(f).

[6] "The simple fact that a district court might assign greater weight to the
state administrative findings is irrelevant for purposes of determining whether
the court should characterize the action as an 'appeal' or as an 'original civil
action.'" Kirkpatrick, 216 F.3d at 385.

jurisdiction, because this action could not have been brought here until after Plaintiffs exhausted their administrative remedies provided for in both 20 U.S.C. § 1415(f)(1)(A) and N.C. Gen. Stat. § 115C-109.6. (Docket Entry 10 at 2-3.) Specifically, Plaintiffs contend that a party may not file suit in state or federal court "until that party has sought review from the [state educational agency]." (Id. at 2.)

Plaintiffs state that "'original jurisdiction' is defined as '[a] court's power to hear and decide a matter *before any other court can review the matter*.'" (Docket Entry 10 at 2 (citing Black's Law Dictionary 385 (2d Pocket ed. 2001)) (emphasis and bracket in original).) Plaintiffs, however, admit that they could not have filed this action in state court any earlier than in federal court; nor do Plaintiffs claim that the exhaustion requirement applies only to parties who pursue relief in federal, as opposed to state, court. (See Docket Entry 10 at 3.) Using Plaintiffs' own definition of original jurisdiction, this Court thus has original jurisdiction over IDEA actions, because state courts are not entitled to hear these matters prior to federal courts.

Furthermore, the IDEA's exhaustion requirement does not create a jurisdictional bar absent a clear Congressional indication that administrative exhaustion constitutes a jurisdictional prerequisite. Cf. Anderson v. XYZ Corr. Health Serv. Inc., 407 F.3d 674, 678 (4th Cir. 2005) ("While Congress could have provided that a district court lacks subject-matter jurisdiction in

prison-condition cases unless the inmate has exhausted his administrative remedies, the PLRA[, Prison Litigation Reform Act,] does not do that. To the contrary, the structure of the PLRA itself clearly indicates that exhaustion of remedies is *not* a jurisdictional requirement." (emphasis in original)). The IDEA does not contain any indication that its exhaustion requirement restricts a federal court's subject-matter jurisdiction. <u>See</u> 20 U.S.C. § 1415(i)(3)(A).

The Court finds the decision in <u>Mosely v. Bd. of Educ. of Chicago</u>, 434 F.3d 527 (7th Cir. 2006), particularly persuasive. In <u>Mosley</u>, the Seventh Circuit reversed a district court's dismissal for lack of subject-matter jurisdiction on the basis of failure to exhaust the IDEA's administrative remedies and stated that the district court should not have attributed jurisdictional significance to the exhaustion requirement. <u>Id.</u> at 532. The Seventh Circuit reaffirmed its prior position "describ[ing] the exhaustion requirement found in the IDEA as a claims-processing rule, pointing out that 'lack of exhaustion usually is waivable, as lack of jurisdiction is not.'" <u>Id.</u> at 533 (citing <u>Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68</u>, 98 F.3d 989, 991 (7th Cir. 1996)). The <u>Mosley</u> Court, quoting the United States Supreme Court, emphasized the importance of distinguishing between claims-processing rules, such as the IDEA's exhaustion requirement, and "jurisdictional" elements:

> clarity would be facilitated . . . if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for

prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.

434 F.3d at 532-33 (citing Eberhart v. United States, 546 U.S. 12, 16 (2005) (quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004) (internal quotation marks omitted))).

Prior to Mosley, the Fourth Circuit had recognized that the IDEA included an exhaustion of remedies requirement. M.M. v. Sch. Dist. of Greenville County, 303 F.3d 523, 535-36 (4th Cir. 2002). In dismissing certain IDEA claims, the M.M. Court described, at least in dicta, the failure to exhaust administrative remedies as creating a jurisdictional defect. Id. at 536 (citing Devine v. Indian River County Sch. Bd., 249 F.3d 1289, 1292 n.2 (11th Cir. 2001)). In reaching its decision, the Fourth Circuit relied on Devine, a case in which the United States Court of Appeals for the Eleventh Circuit stated that "Plaintiffs must exhaust their administrative remedies by proceeding through a due process hearing to adjudicate the appropriateness of the IEPs before they can challenge those IEPs in court." Devine, 249 F.3d at 1292 n.2.

The Devine Court did not attribute jurisdictional status to the exhaustion requirement.[7] Likewise, the M.M. Court could have dismissed the claims for periods where the administrative remedies

_____

[7] Devine did cite Babicz v. Sch. Bd. of Broward County, 135 F.3d 1420, 1422 (11th Cir. 1998). Babicz acknowledged the Charlie F. Court's distinction between claims processing rules and jurisdictional requirements. Babicz, 135 F.3d at 1422 & n.11. The Babicz Court, however, without further discussion, affirmed the district court's dismissal of IDEA claims on the basis of lack of subject matter jurisdiction due to the plaintiffs' failure to exhaust their administrative remedies. Id. at 1421-22.

-12-

were unexhausted without reaching the jurisdictional issue. It thus appears that the Fourth Circuit's jurisdictional reference in M.M. was not necessary to its ruling and thus not precedential in nature:

> The question now presented is whether or not the expressions above quoted should be regarded by us as a binding opinion enunciating a doctrine of law, or as obiter dicta. Perhaps no rule is better settled, or more frequently inculcated by the Supreme Court, than that expressions found in opinions of courts which relate to a doctrine of law not necessarily in issue in the case then before the court are not to be regarded as deliberate and binding enunciations of such doctrines. <u>Carroll v. Carroll's Lessee</u>, 16 How. 275, 287, 14 L.Ed. 936 [(U.S. 1854)]. It is probable that there is no volume of the Supreme Court Reports in which the idea is not advanced that <u>expressions of opinion not necessary to the determination of the case are to be regarded as dicta</u>. We think it safe to say that every judge in writing opinions occasionally uses expressions which relate to points not necessarily in issue, and which do not represent either his own or his associates' studied and deliberate views. We feel, therefore, constrained to consider, first, if the expressions above quoted state views that are binding upon this court, and, if not, if they be such as we should follow.

Board of Comm'rs of Hertford County, N.C. v. Tome, 153 F. 81, 87 (4th Cir. 1907) (emphasis added).

Moreover, other courts, in decisions issued subsequent to M.M., have questioned the propriety of attributing jurisdictional significance to the IDEA's administrative remedies in light of recent Supreme Court jurisprudence. See McQueen v. Colorado Springs Sch. Dist. No. 11, 488 F.3d 868, 873 (10th Cir. 2007) ("Although courts have repeatedly referred to the [IDEA's]

-13-

exhaustion requirement as *jurisdictional*, recent Supreme Court jurisprudence in other contexts casts doubt on that characterization." (emphasis in original) (internal citations omitted)); Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198 (2d Cir. 2007) ("[W]e are not forced to decide whether our precedent, which labels the IDEA's exhaustion requirement as a rule affecting subject matter jurisdiction rather than an 'inflexible claim-processing' rule that may be waived or forfeited, remains good law after *Kontrick* and *Eberhart* . . . ." (emphasis in original)). In light of the Supreme Court's intervening decisions identified in Mosley, McQueen, and Coleman, the Court does not find it necessary to follow the M.M. decision's dicta regarding the issue of whether the IDEA's exhaustion of administrative remedies requirement constitutes a jurisdictional bar in federal court. See generally Barbour v. Int'l Union, 594 F.3d 315, 321 (4th Cir. 2010) ("We find that, because it was dictum, the 'rule' expressed in McKinney is not binding on this panel and that intervening case law from the Supreme Court, while not controlling, nonetheless 'counsels' a different result.").

In addition, even if the statement in M.M. was controlling with respect to jurisdiction in IDEA cases, no jurisdictional bar exists in this case because Plaintiffs exhausted administrative remedies. An ALJ held an impartial due process hearing (Docket Entry 13 at 1), as required by 20 U.S.C. § 1415(f)(1)(A) and N.C. Gen. Stat. § 115C-109.6. Subsequently, an SRO reviewed the appeal of the ALJ's decision (Docket Entry 13 at 2), as required by 20

-14-

U.S.C. § 1415(g) and N.C. Gen. Stat. § 115C-109.9.  The State Board of Education reviewed Plaintiffs' matter through its Exceptional Children Division which appoints the SRO.  N.C. Gen. Stat. § 115C-109.9.  Neither the IDEA nor state statutes provide for additional proceedings or require exhaustion of any other administrative remedies prior to bringing an action in state or federal court.  20 U.S.C. § 1415(i)(2)(A).  Accordingly, even if the IDEA's exhaustion directive created a jurisdictional bar to federal court proceedings in some cases, it constitutes no such limit here.

For all of the foregoing reasons, Plaintiffs' argument that the Court lacks original jurisdiction over this action because the IDEA includes an administrative exhaustion requirement lacks merit.

Next, Plaintiffs assert that the IDEA only provides federal courts with appellate jurisdiction to review state administrative decisions.  Plaintiffs argue that a provision of the IDEA, 20 U.S.C. § 1415(i)(3)(A), uses the term "jurisdiction" as opposed to "original jurisdiction."  (Docket Entry 10 at 3.)  Based on this distinction, Plaintiffs reason that "Congress did not choose to grant federal courts 'original jurisdiction' over these claims.  Instead, Congress merely intended for a party aggrieved by the decision of a state review officer to have the option to appeal to a federal court if it wished to do so."  (Docket Entry 10 at 3-4.)  This linguistic distinction lacks significance; district courts possess only original jurisdiction and not appellate jurisdiction over a civil action brought under the IDEA after exhaustion of state administrative remedies.  See Kirkpatrick, 216 F.3d 380, 387

-15-

("Lower federal courts lack jurisdiction to entertain appeals from state court judgments because that power is reserved exclusively to the United States Supreme Court. . . . These principles also apply in the administrative realm." (citing <u>Rooker</u>, 263 U.S. at 416)).[8]

Finally, Plaintiffs contend that "the interplay of statutes and rules" supports the view that this Court lacks original jurisdiction. (Docket Entry 10 at 5.) Plaintiffs assert that they filed an "appeal" and that "the North Carolina Administrative Procedures Act governs the content of a suit to appeal the final decision of an administrative agency in North Carolina." (Docket Entry 10 at 4 (citing N.C. Gen. Stat. §§ 150B-45(a)(2), and 150B-46).) In fact, a different state statute governs the procedures for a "party who is aggrieved by the decision of the Review Officer," N.C. Gen. Stat. § 115C-109.9(d). Said statute states that "[a]ny party that does not have the right to appeal under this Part . . . may institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415." <u>Id.</u> Additionally, the IDEA provides for federal question jurisdiction. <u>See</u> 20 U.S.C. § 1415(i)(2)(A). Plaintiffs thus have overlooked state and federal statutory provisions that make clear that a party litigating issues

---

[8] Notably, the IDEA provision cited by Plaintiffs does not describe the "jurisdiction" of the federal courts as only "appellate" in nature. Moreover, Plaintiffs admit that this Court <u>does possess federal question jurisdiction over IDEA actions</u>: "Congress merely intended to ensure that a district court was exercising its federal question jurisdiction over such matters and that cases were not dismissed improvidently because the amount in controversy was less than $75,000.00." (Docket Entry 10 at 4.)

related to the IDEA brings a "civil action" in state or federal court and not an "appeal."

In sum, Plaintiffs brought a "civil action" in a state court which shares concurrent original jurisdiction with this Court over IDEA-related claims.

### 2.   Well-Pleaded Complaint Rule and Artful Pleading Doctrine

Plaintiffs also cite two cases they believe set forth the standard for removal in this context.  (<u>See</u> Docket Entry 10 at 5.) Because those cases addressed the "artful pleading doctrine," this Court first provides a brief discussion of Plaintiffs' "Petition" and determines whether, under the well-pleaded complaint rule, Plaintiffs are seeking relief under federal and/or state law. Next, this Court considers the cases Plaintiffs cited to determine whether those decisions should influence the outcome of this case.

In their "Petition," Plaintiffs make several allegations based on federal law, including: (1) the SRO "committed reversible error by failing to recognize that a shadow-aide was a related service under the Individuals with Disabilities Education Act ('IDEA'), 20 U.S.C. § 1400 *et seq*." (Docket Entry 1, Ex. A at 1 (emphasis in original)); (2) the SRO "committed reversible error by . . . refusing to find a violation of [the] IDEA in Respondent's refusal to provide a shadow-aide" (<u>id.</u>); (3) the SRO "committed reversible error by failing to recognize that Respondent's failure to discuss the provision of a shadow-aide was a procedural violation of [the] IDEA that impeded B.W.'s right to a [FAPE]" (<u>id.</u> at 1-2); and (4)

-17-

the SRO "committed reversible error by considering the Least Restrictive Environment ('LRE') requirement . . . because that consideration is improper in determining the appropriateness of a parental placement under [the] IDEA" (id. at 2).

Furthermore, Plaintiffs request a reversal of the SRO's decision and a judicial declaration: "1. That the IEP developed in March 2008 by B.W.'s IEP team was not designed to provide B.W. with a [FAPE]; 2. That Respondent's refusal to engage in discussions at the March 2008 IEP meeting . . . was a procedural violation of the IDEA, which impeded B.W.'s right to a [FAPE] . . .; 3. That the private program selected by Petitioners from February 2008 through February 2009 was appropriate under the IDEA; [and] 4. That, therefore, the Petitioners are entitled to reimbursement in the amount of $95,826.50 for tuition and rent expended by them in providing the appropriate educational setting denied B.W. by the Respondent." (Docket Entry 1, Ex. A at 3.)[9]

Plaintiffs assert that they proceeded under N.C. Gen. Stat. § 115C-109.9(d). (Id. at 2.) In this regard, Plaintiffs allege that "[t]he [SRO] committed reversible error by equating the 'basic floor of opportunity' standard enunciated by the United States Supreme Court in the *Rowley* decision with the standard required

_____

[9] Plaintiffs' "Petition" also seeks: (1) recovery of attorneys' fees; (2) prospective reimbursement "for all 1:1 Applied Behavior Analysis therapy delivered to B.W., including but not limited to the provision of a shadow-aide, until such time as B.W.'s therapy consultant feels he is ready to enter a neurotypical classroom with a shadow aide;" and (3) the costs of the action and any additional relief the Court deems "just and proper." (Docket Entry 1, Ex. 1 at 3-4.)

under North Carolina law by Chapter 115C of the General Statutes and the guarantee found in Article I, Section 15 and Article IX, Section 2 of the North Carolina Constitution, as enunciated in *Leandro v. State*, 346 N.C. 336, 347, 488 S.E.2d 249, 255 (1997)." (<u>Id.</u> (emphasis in original).)

Notwithstanding these arguments, Plaintiffs' "Petition" on its face presents a federal question about whether the SRO complied with the IDEA. Additionally, Plaintiffs' "Petition" asserts a federal claim for tuition reimbursement for a parental placement under the IDEA. <u>See</u> <u>M.S.</u>, 553 F.3d at 323. Plaintiffs claim that the SRO failed to consider a state statute and the North Carolina Constitution in reaching its decision, but Plaintiffs' reference to state law does not transform the "Petition" into one that relies <u>exclusively</u> on state law for relief. Accordingly, under the well-pleaded complaint rule, federal jurisdiction arises because Plaintiffs' Petition raises a federal question under the IDEA.

This finding that the "Petition" presents a federal question under the IDEA provides this Court with a sufficient basis to deny the instant motion and to permit removal. The Court, however, will address the cases that Plaintiffs believe apply to the removal of this action. In this regard, Plaintiffs state that "[t]here appear to only have been two cases across the country where the propriety of removal of an appeal from a hearing review officer has ever been at issue." (Docket Entry 10 at 5.) Plaintiffs identify <u>Fayetteville Perry Local Sch. Dist. v. Reckers by and through Reckers</u>, 892 F. Supp. 193 (S.D. Ohio 1995), and <u>Still v. Debuono</u>,

-19-

927 F. Supp. 125 (S.D.N.Y. 1996), and then attempt to use reasoning from these cases, despite the fact that both courts denied the respective plaintiffs' motion to remand.  (<u>Id.</u> at 5-6.)[10]

In the first case cited by Plaintiffs, the court held that the defendants could remove the action to federal court.  <u>Fayetteville Perry Local Sch. Dist.</u>, 892 F. Supp. at 198.  A State Level Review Officer ("SLRO") essentially affirmed the decision of an Impartial Hearing Officer which held that a school district had not provided a handicapped child with a FAPE, and that the school district had to reimburse the child's parents for private school tuition.  <u>Id.</u> at 194.  The school district appealed the SLRO's decision pursuant to an Ohio state law, and the defendant-parents removed the case to

_____

[10] Plaintiffs' assertion that only two courts have addressed a removal of this sort appears incorrect.  Other similar cases, including a more recent case from within the Fourth Circuit, do exist.  <u>See</u> <u>M.Q. v. Baltimore County Pub. Sch.</u>, No. CCB-05-1310, 2005 U.S. Dist. LEXIS 16690, at *1 (D. Md. Aug. 8, 2005) (unpublished) (addressing federal question jurisdiction and the artful pleading doctrine in the context of an IDEA action removed to federal court).  Moreover, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  <u>Hertz Corp. v. Friend</u>, 130 S. Ct. 1181, 1193 (2010).  Accordingly, courts that addressed IDEA actions which were removed from state court must have determined that subject-matter jurisdiction existed.  As Defendant noted in its brief (Docket Entry 13 at 4), the Fourth Circuit did not state that a district court improperly asserted jurisdiction where the defendant removed an IDEA civil action to federal court after the plaintiffs initially filed their suit in state court in <u>K.J. ex rel. B.J. v. Fairfax County Sch. Bd.</u>, 39 Fed. Appx. 921, 924 (4th Cir. 2010) (unpublished).  Likewise, other federal courts have not raised the question of jurisdiction in IDEA cases removed from state courts.  <u>See</u> <u>Cumberland Reg'l High Sch. Dist. Bd. of Educ. v. Freehold Reg'l High Sch. Dist. Bd. of Educ.</u>, 293 Fed. Appx. 900 (3d Cir. 2008) (unpublished); <u>Ms. M. ex rel. K.M. v. Portland Sch. Comm.</u>, 360 F.3d 267 (1st Cir. 2004).  Moreover, other courts have expressly stated that removal jurisdiction exists where a plaintiff brought a claim seeking relief under the IDEA.  <u>See, e.g.</u>, <u>Gray v. D.C. Pub. Sch.</u>, No. 09-1806 (GK), 2010 U.S. Dist. LEXIS 17055, at *7 (D.D.C. Feb. 25, 2010) (unpublished) ("Because Plaintiff makes a claim under the IDEA, a federal statute, this Court has subject matter jurisdiction over the claim, and removal on this basis was appropriate.").

federal court.  <u>Id.</u> at 195.  Because federal and state law permitted the plaintiff-school district to bring, respectively, a civil action or appeal based on the SLRO's decision, the court undertook an analysis of whether the plaintiff-school district had engaged in "artful pleading" to escape federal jurisdiction.  <u>Id.</u> at 197-98.[11]  The court concluded that "the federal statute provided better protections for litigants than are available under state law" and, thus, that the defendant-parents could remove the action to federal court.  <u>Id.</u>

According to Plaintiffs, the foregoing case stands for the proposition that a court should compare the "protections" afforded to children and their parents under North Carolina and federal law to determine whether removal is appropriate.  (Docket Entry 10 at 5.)  Further, they claim that a comparison demonstrates that "the state law issue predominates in this case," because North Carolina's Constitution provides a "more stringent . . . guarantee of sound basic education to all children," and thus that removal is inappropriate.  (<u>Id.</u>)  Plaintiffs essentially ask this Court to turn the "artful pleading doctrine" on its head to look beyond the federal claims in the "Petition" to find that Plaintiffs alleged exclusively state law claims.  This analysis ignores the premise, cited above, that "the plaintiff is the master of his complaint and generally [the well-pleaded complaint rule] permits plaintiffs to avoid federal jurisdiction by exclusive reliance on state law."

_____

[11] It is not clear from the opinion whether the plaintiff-school district alleged only state law claims in its state court pleading.

Custer, 89 F.3d at 1165 (internal quotation marks omitted).
Plaintiffs could have, but chose not to, assert only state law
causes of action in their "Petition."

In the second case cited by Plaintiffs, the district court
held that removal was appropriate in an IDEA action. Still, 927 F.
Supp. at 129.  In Still, the acting commissioner of New York City's
mental health department instituted state court proceedings to
challenge the determination of an ALJ, who had ordered the acting
commissioner to reimburse the parent of an autistic infant for
money spent for an "appropriate education," but the parent removed
the action to federal court.  Id.  The court applied the artful
pleading doctrine and stated that the acting commissioner's
"arguments [against removal] obfuscate the fact that the underlying
issues are governed by federal and not state law."  Id. at 128.

Specifically, the acting commissioner had challenged the ALJ's
decision to award the parent the costs associated with providing
his son with an appropriate education.  Id.  "Thus it is the
interpretation of what constitutes an 'appropriate' education under
IDEA, a federal statute, that is at the root of this litigation.
Further, . . . the petition does refer to the federal statute on
its face."  Id.  The court concluded that "[b]oth the parties'
submissions and the nature of the controversy reveal that federal
law is 'pivotal' and basic in the determination of the conflict
between the parties."  Id. (internal quotation marks omitted).

According to Plaintiffs, the Still court "realized the main
issue in the case was the standard of education that the child

-22-

received and not the issue of teacher qualifications." (Docket
Entry 10 at 6.) Plaintiffs claim that "since the federal standard
predominated in that case, the *Still* court found removal proper."
(Id. (emphasis in original).) In fact, the Still court stated that
the "sole claim raised by the petition is that ALJ Zylberberg erred
in awarding reimbursement for use of 'unqualified' personnel.
Although this question superficially relates to N.Y. Pub. Health
Law sec. 2541, its real resolution turns on a substantial question
of federal law." Id. at 129 (internal quotation marks omitted).
The Still Court made this assessment as part of its analysis of
"artful pleading." The Still decision thus fails to aid Plaintiffs
because Plaintiffs' "Petition" does not rely exclusively on state
law claims, but rather explicitly invokes the IDEA; as a result,
the Court has no occasion to move beyond the "well pleaded
complaint rule" to the "artful pleading doctrine."

In sum, Plaintiffs' "Petition" makes several allegations based
on and seeking relief under the IDEA and thus presents a federal
question within the meaning of the "well pleaded complaint rule"
without reference to the "artful pleading doctrine."

## IV. CONCLUSION

In light of the Fourth Circuit's Kirkpatrick decision, this
Court possesses federal question original jurisdiction over this
civil action pursuant to 20 U.S.C. § 1415(i)(2)(A). The Court
finds Plaintiffs' arguments designed to evade Kirkpatrick's reach
unpersuasive and their reliance on two district court decisions
unwarranted given the nature of the allegations Plaintiffs have

raised (_i.e._, that Plaintiffs have made claims based on the IDEA, a federal statute). The Court therefore denies Plaintiffs' instant motion.[12]

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand (Docket Entry 9) is **DENIED**.

　　　　　　　　　　　　　　　　　/s/ L. Patrick Auld
　　　　　　　　　　　　　　　　　**L. Patrick Auld**
　　　　　　　　　　　**United States Magistrate Judge**

July 20, 2010

---

[12] For the reasons stated in <u>Thomas v. North Carolina</u>, No. 1:10CV226, 2010 WL 2176075, at *6-8 (M.D.N.C. May 21, 2010) (unpublished), the undersigned United States Magistrate Judge disposes of this matter by order, rather than by recommendation.